# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WILLIAM LARRY PRICE,

        Petitioner,

                              CIVIL NO. 2:16-CV-11486

v.                             HONORABLE PAUL D. BORMAN
                               UNITED STATES DISTRICT COURT

TONY TRIERWEILER,[1]

        Respondent.
_____/

## OPINION AND ORDER (1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

William Larry Price, ("Petitioner"), confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, petitioner challenges his conviction and sentence, in LC No. 12–005923–FC, for armed robbery, Mich. Comp. Laws § 750.529, carrying a concealed weapon (CCW), Mich. Comp. Laws § 750.227, felonious assault, Mich. Comp. Laws § 750.82, and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws §

---

[1]The Court amends the caption to reflect the current warden of petitioner's incarceration.

1

750.227b.  Petitioner also challenges his conviction and sentence in LC No. 13–000023–FC for two counts of armed robbery, Mich. Comp. Laws § 750.529. For the reasons stated below, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

I. BACKGROUND

Petitioner was convicted following a bench trial in the Wayne County Circuit Court.

### A.  No. 12–005923–FC, April 19, 2011, Armed Robbery.

Dequain Brazzle used Mocospace, an online site, to sell iPhones. (Tr. 5/13/2013, pp. 10-11.).  He found a potential buyer, exchanged text messages and phone calls, and arranged a meeting to take place on April 19, 2011, to facilitate a sale. (*Id.* at 11-13).  The meeting was to take place in Highland Park at 5:30, when Dequain got off of work, but then the person he was to meet said that he could not get a ride and changed the location to Eight and Southfield, on Fenmore Street, with a meeting time of 10:00 p.m. (*Id.* at 12-13, 48-49).  Dequain and his nephew, Deagerald Brazzle, drove to the intersection of Fenmore and Trojan. (*Id.* at 13-14). The potential buyer was petitioner (as Dequain and Deagerald both identified him in court). (*Id.* at 19-20, 86).  Dequain also recognized petitioner from the picture on the Mocospace website. (*Id.* at 20).

2

When petitioner asked if he could see the phone, to determine if it worked, Dequain took the phone out of the box and handed it to petitioner. (*Id.* at 22). Upon taking the phone, petitioner said "thank you," which confused Dequain, until he saw petitioner pull a black revolver partially out of his pocket, which he showed to Dequain. (*Id.* at 22-24).

Dequain backed away from petitioner, went around to the other side of the car and attempted to get in, as petitioner pulled the gun all the way out of his pocket and then aimed it down, but toward Dequain. (*Id.* at 23-24, 30). As Dequain got into the car, he heard shots fired from behind him. (*Id.* at 25-27). Dequain heard "three max" shots; none hit him, but one pierced the back driver's-side tire. (*Id.* at 27-28, 30).

Dequain and his nephew then drove to a nearby gas station where they called the police. (*Id.* at 35). About a week later, on April 26, 2011, Dequain spoke with Officer Roland Brown, giving him a description of the perpetrator and immediately picking petitioner out from a photographic array. (*Id.* at 36-40). On April 29, 2011, Deagerald Brazzle picked petitioner from a photographic array and testified at trial that he "instantly knew who it was." (*Id.* at 94).

**B. No. 13–000023–FC, May 28, 2011, Two Counts Armed Robbery.**

Martell Jones bought phones which he would sell to Arthur Shamayev to be

3

refurbished and resold. (*Id.* at 119-120). Arthur Shamayev and Alexander Dembitsky were friends. (*Id.* at 119). Jones called Shamayev on May 28, 2011, and told him he knew someone who was selling iPhones. So, Shamayev went with Dembitsky to pick up Jones and go and meet with the person selling the phones. (*Id.* at 120-121). They met three men on a street in Detroit. (*Id.* at 123-125). One of the three individuals asked Shamayev and Jones to pull their shirts up. (*Id.* at 125). They pulled their shirts up and walked up to the three men. (*Id.*).

When Shamayev and Jones walked up to the men, petitioner pulled up his waistband, showed the handle of a gun and asked "where is the money at?" (*Id.* at 127). Shamayev told petitioner that the money was "in the car." He and Jones walked to the car, while petitioner and the two others followed. (*Id.* at 128). Shamayev opened the car door and told petitioner that the money was on the door pocket. Petitioner took money totaling $1,700 out of the door. (*Id.* at 128-130). Petitioner and his cohorts also took Shamayev's and Jones's phones. (*Id.* at 131). Petitioner tried to take Dembitsky's phone, but he refused to give up his phone when he determined that the gun he saw in petitioner's waistband was fake. (*Id.* at 138, 177). Petitioner then said, "Let's pop him" before they all ran across the street and through the backyards. (*Id.* at 177, 179). Shamayev and his companions got in the car and called the police from Dembitsky's phone. (*Id.* at 179).

4

Detroit Police Officer Roland Brown investigated both robberies. (Tr. 5/14/2013, p. 75). He found that the cell phone number used by the perpetrator in both robberies was the same number that belonged to a woman. Brown then obtained a list of names associated with her address and found one individual whose physical characteristics matched the robber's appearance in both cases. He then got that man's picture and used it for the photographic arrays. (*Id.* at 75-79).

Shamayev identified petitioner in a photographic array as the person who robbed him, saying petitioner "looks like the guy who robbed me." (Tr. 5/13/2011 pp. 135-136, 153). Dembitsky also identified petitioner in that lineup, saying "Number two kind of looks like him." (*Id.* at 174-175). Jones also identified petitioner in a photographic lineup. (Tr. 5/15/2011, pp. 34-35).

Shamayev also identified petitioner in court by saying "I think so" when asked if petitioner was the one who robbed him. Shamayev later testified "Honestly, that's the guy who took my money right there," referring to petitioner. (Tr. 5/13/2013, pp. 125, 162). Dembitsky testified that petitioner "kind of looks" like the man who reached into the car, but that the person at the time had a reddish-looking beard, and "now he doesn't, so it's kind of hard for me to judge." (*Id.* at 170). Dembitsky further testified that on May 31, 2011, he was shown a photographic lineup and identified petitioner as the man who took money from the

car door. (*Id.* at 174-176).

Petitioner's conviction was affirmed on appeal. *People v. Price*, Nos. 12–005923–FC, 13–000023–FC 3197444, 2014 WL 6068393 (Mich. Ct. App. Nov. 13, 2014); *lv. den.* 497 Mich. 1014, 862 N.W.2d 204 (2015).

Petitioner filed a petition for a writ of habeas corpus, raising the following claims:

> I. Mr. Price was denied his constitutional due process rights by the admission of prior bad acts evidence which rendered his entire trial fundamentally unfair.
>
> II. Mr. Price was denied his state and federal due process rights in case # 13-0023-01, where his conviction was not supported by sufficient evidence to establish beyond a reasonable doubt that he was the person who committed the crime.
>
> III. Mr. Price's rights to due process under the United States Constitution were violated, where the state court incorrectly scored 15 points for Offense Variable 10 of the sentence guidelines.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

6

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (*Id.* at 103). A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

**III. DISCUSSION**

**A. Claim # 1. The prior bad acts evidence claim.**

Petitioner alleges that the trial court erred in permitting the prosecution to introduce evidence that petitioner had been involved in multiple robberies and by consolidating the two pending robbery cases to be heard together at his bench trial. It is petitioner's contention that the other acts evidence was more prejudicial than probative and the consolidation of the two cases made it more likely that he would be convicted in both cases.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United

8

States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000); *see also Stephenson v. Renico,* 280 F. Supp. 2d 661, 666 (E.D. Mich. 2003).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).

Moreover, it is not clear that the evidence that petitioner complains about would be excluded under 404(b). Background evidence, often referred to as *res gestae*, does not implicate the provisions of 404(b). *United States v. Hardy,* 228 F.3d 745, 748 (6th Cir. 2000). Background evidence consists of other acts which are "inextricably intertwined" with the charged offenses or those acts, "the telling of which is necessary to complete the story of the charged offense." *Id.* The Sixth Circuit explained that:

> "Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense."
>
> *United States v. Hardy,* 228 F.3d at 748.

As the Michigan Court of Appeals indicated in rejecting petitioner's claim, "Here, the prior bad acts evidence was offered to show a scheme or system in doing an act, which constitutes a proper purpose." *People v. Price*, 2014 WL 6068393, at *1. The Court explained:

> Here, the similarities between the two cases are striking. In both cases, the victims were prompted by ads on the Mocospace social networking site to buy or sell cell phones. In both instances, Price changed the location of the transaction at the last minute and was accompanied by at least one other individual. And in both cases, Price secured control over the victims before producing a firearm and

> completing the robbery. In the first case, Price did this by taking physical possession of the phone. In the second case, Price requested that the victims "lift their shirts" to show they were not carrying firearms. Price then proceeded to pull a gun in the first case, and simply display a gun in the second case. These factors go beyond a general similarity and evidence common features of a consistently employed plan. Moreover, we find that the probative value of such evidence, was not "substantially outweighed by unfair prejudice." Accordingly, the testimony was properly admitted.

*People v. Price*, 2014 WL 6068393, at *2. (footnote omitted).

Because the first robbery was "inextricably intertwined" with the subsequent robberies, the admission of this evidence did not deprive petitioner of a fair trial.

Furthermore, appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge. A federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his first claim.

**B. Claim # 2. The sufficiency of the evidence claim.**

Petitioner alleges that the testimony given by Shemayev and Dembitsky did not prove beyond a reasonable doubt the identity of the perpetrator. Therefore, petitioner contends that his conviction was not supported by sufficient evidence to establish beyond a reasonable doubt that he was the person who committed the

11

crime.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original). The *Jackson* standard applies to bench trials, as well as to jury trials. *See e.g. U.S. v. Bronzino,* 598 F.3d 276, 278 (6th Cir. 2010).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application

of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003); *see also Butzman v. U.S.,* 205 F.2d 343, 349 (6th Cir. 1953)(in a bench trial, credibility of witnesses is a question for trial judge).

The Michigan Court of Appeals reasonably found that there was sufficient evidence to sustain petitioner's conviction, as follows:

> At trial, the court noted that the case turns on identity. Establishing the identity of the perpetrator is an essential element in a criminal prosecution. The trial court emphasized that all of the witnesses identified Price. Witness identification of a defendant "may be sufficient to support a conviction of a crime." Regarding the May 28, 2011 robbery specifically, the court indicated that Alexander Dembitsky and Arthur Shamayev's identifications had the mark of reliability. The court indicated that Dembitsky "was very careful not to overstate his memory or his testimony," which increased his credibility and the reliability of his testimony. Additionally, the court noted that Martell Jones's focus during the crime was on Price, that Jones also did not embellish his testimony, and reasoned that Jones's identification provided a strong affirmation of Dembitsky and Shamayev's less than certain identifications of Price. Thus, the court found the identification testimony of all three witnesses to be credible. Deferring to the credibility judgments of the trial court as trier of fact, we conclude that sufficient evidence was adduced to prove beyond a reasonable doubt that Price committed the May 28, 2011 robbery.

*People v. Price*, 2014 WL 6068393, at *2. (footnotes omitted).

The trial court judge found the testimony given by the victims to be credible. Although petitioner challenges the certainty of the identification given by the victims, which indicated that he was the perpetrator, it is up to the trier of fact to gauge the accuracy of the identification. *See Foxworth v. St. Amand*, 570 F.3d 414, 426-28 (1st Cir. 2009)(Massachusetts state court did not "unreasonably apply" clearly established Federal law, in finding that sufficient evidence

14

supported habeas petitioner's state-court conviction for second-degree murder, even though one eyewitness identification was the only evidence that directly implicated petitioner, and eyewitness admitted he was only "80 percent sure" of his identification; it was up to jury to gauge the accuracy of the identification, and there was no principled way to label jury's choice to find the identification accurate as irrational, as eyewitness selected petitioner's picture from each of two separate, constitutionally adequate photo arrays in close proximity to the time of the murder, and petitioner's subsequent expression of less than complete certitude came nearly a year later). Petitioner is not entitled to relief on his sufficiency of the evidence claim.

### C. Claim # 3. The sentencing claim.

In his third claim, petitioner alleges that his due process rights were violated when the state court scored 15 points for Offense Variable 10 of the Michigan Sentencing Guidelines.

Petitioner's claim that the state trial court incorrectly scored his sentencing guidelines range under the Michigan Sentencing Guidelines is non-cognizable on habeas review, because it is a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). Errors in the

application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016). Petitioner's claim that the state trial court improperly scored 15 points for Offense Variable 10 of the sentencing guidelines would thus not entitle him to habeas relief, because such scoring does not violate any of the petitioner's federal due process rights. *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000). Petitioner is not entitled to relief on his third claim.

The Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court also denies petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: May 29, 2018

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 29, 2018.

                                                s/Deborah Tofil
                                                Case Manager